IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDSAY A. ACKLEY,

    Plaintiff,

v.                                          Case No. 6:17-cv-01108-JTM

DEPUTY NEPHI RICHARDSON,
*In his Individual Capacity*; BARBER
COUNTY, KANSAS; COMANCHE
COUNTY, KANSAS; KIOWA COUNTY,
KANSAS; DODGE CITY, KANSAS;
CITY OF COLDWATER, KANSAS;
*and* DOES 1-10,

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Lindsay Ackley filed this action under 42 U.S.C. § 1983 claiming her constitutional rights were violated in connection with the initial stop of a vehicle in which she was a passenger, an ensuing high speed chase, and her subsequent detention. Additionally, she asserts claims of negligence and "taking of personal property" against defendant Dodge City, Kansas. The latter claims relate to plaintiff's four dogs, which were in the vehicle with plaintiff during the car chase, and which were later turned over to the Dodge City Animal Shelter. Plaintiff alleges the dogs were then "transferred to another organization with their disposition unknown," and contends Dodge City is liable under Kansas law for negligently failing to safeguard the dogs and for transferring them. The matter is now before the court on a motion to dismiss by Dodge City. For the reasons stated herein, the motion is granted in part and denied in part.

**I. Summary of Complaint.**

The following allegations are taken from the complaint.[1] Plaintiff Lindsay Ackley was a passenger in a vehicle that was stopped on the highway by Barber County Sheriff's Deputy Nephi Richardson on the night of May 20, 2015. At some point during the stop, the driver of the vehicle decided to drive off, taking plaintiff and plaintiff's four dogs in the car with him. Following a high speed chase involving several law enforcement officers, one or more Comanche County Sheriff's Deputies executed a "pit maneuver," which caused the fleeing car to flip over several times before landing upside down in a ditch.

Plaintiff was handcuffed and taken to Comanche County Memorial Hospital, where she was kept overnight. The next day, both plaintiff and the driver, who had an outstanding California warrant for his arrest, were taken to the Kiowa County Jail in Greensburg, Kansas. Plaintiff contends that on the way there, officers "caused her emotional distress by telling her that her dogs would be euthanized if she was not out of jail in three … days." Plaintiff was booked into the jail and was allegedly held for nineteen days without ever being brought before a judge or being provided an attorney.

Plaintiff was released from the jail on June 9, 2015. The complaint alleges:

> 38. DANNY, an employee of COLDWATER, took control of the dogs on or about May 21, 2015 and initially told LINDSAY that the "the dogs would be euthanized". DANNY and / or another employee [Bradley Gossett] then indicated in the COLDWATER animal records that the dogs were either abandoned or surrendered by owner. On or about June 18, 2015 the City of Coldwater transferred custody of the four (4) dogs to

---
[1] Plaintiff's allegations concerning a lack of justification for the traffic stop and the allegedly unreasonable seizure and detention that followed the initial stop are largely omitted from the above summary because they are immaterial to the claims against Dodge City.

2

Dodge City Animal Shelter. The record at the Dodge City Animal Shelter shows that each of the four (4) dogs were the result of an OWNER SURRENDER. Dodge City did nothing to verify the representations made by COLDWATER even though the four (4) dogs suddenly showed up after a high-speed chase which was in the local newspapers.

39. Despite numerous calls to DODGE Animal Shelter, the dogs were still marked as "OWNER SURRENDER" and transferred the four (4) dogs to a rescue organization on or about June 19, 2015.

40. During the time LINDSAY was falsely imprisoned she was unable to inquire of the four (4) dogs. After LINDSAY'S release after being falsely imprisoned for nineteen (19) days, a Dodge City Animal Shelter told LINDSAY "the dogs are gone".

* * *

44. She then travelled to Corpus Christi, Texas on June 12, 2015 and then on July 7, 2015 travelled to home in West Hills, California since upon her release, LINDSAY could not go directly to California since her mother was out of the country LINDSAY contacted the DODGE Animal Shelter on June 10, 11, 12, 15, 18, 19, 23, and 24 of 2015 and additional telephone calls through January, 2017 until counsel for DODGE instructed her not call his client after "Notice" was provided pursuant to the Kansas Tort Claims Act. The DODGE Animal shelter did absolutely nothing to assist her and refused to give her any information pertaining to the four (4) dogs. Based on information and belief the DODGE Animal Shelter transferred ownership to another Organization even though the DODGE Animal Shelter knew she was the owner, wanted her dogs back, and knew of her numerous inquiries.

Plaintiff alleges that Dodge City "had a duty to safeguard the four (4) dogs until [plaintiff] was released from jail and a reasonable time thereafter," Dkt. 1 at 17, that Dodge City employees breached this duty despite numerous calls from plaintiff, that the dogs were transferred to another organization, with their disposition unknown, and that plaintiff was thereby damaged.

3

**II. Motion to Dismiss.**

Dodge City argues the complaint fails to state a claim for negligence because Dodge City did not owe plaintiff any legal duty. It further contends there was no breach of a duty, even assuming one existed, because it was reasonable for Dodge City to transfer the dogs to the local humane society. As for plaintiff's claim for the "taking of personal property," Dodge City contends the allegations fail to state a viable claim for conversion because Kansas law holds that a household dog has no market value.

**III. Standards Governing Motion to Dismiss Under Rule 12(b)(6).**

"To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1106–07 (10th Cir. 2016), *cert. denied sub nom. Lockett v. Fallin*, 137 S. Ct. 2298 (2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss, the court must accept as true all well-pleaded allegations and view those allegations in the light most favorable to the non-moving party. *See Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550

4

U.S. at 555. Moreover, "[t]he tenet that a court must accept as true all of the allegations contained a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

**IV. Discussion.**

A. *Negligence claim*. Plaintiff contends Dodge City owed her "a duty to safeguard the four (4) dogs until [plaintiff] was released from jail and a reasonable time thereafter." For the reasons that follow, the court finds plaintiff has failed to establish the existence of any such legal duty on the part of Dodge City.

Under Kansas law, a negligence claim has four elements: 1) the existence of a duty to the plaintiff; 2) a breach of that duty; 3) an injury; and 4) proximate cause — that is, a causal connection between the breach of duty and the injury suffered. *Williamson v. City of Hays*, 275 Kan. 300, 311, 64 P.3d 364 (2003). To establish the first element against a governmental entity, the plaintiff must show that "a special relationship exists which gives rise to a special duty owed by the governmental entity to a specific individual." *Williams v. C-U-Out Bail Bonds, LLC*, ___P.3d ___, 2017 WL 3568654, *5 (Kan. Ct. App., Aug. 18, 2017). The determination of whether a duty exists is a question of law to be decided by the court. *Id*.

The "public duty doctrine" holds that a governmental agency generally owes duties to the public at large rather than to individuals. *Fudge v. City of Kansas City*, 239 Kan. 369, 372, 720 P.2d 1093 (1986). This public duty does not mean the agency owes a legal duty to a specific person. *Jarboe v. Board of Sedgwick County Comm'rs*, 262 Kan. 615, 631, 938 P.2d 1293 (1997). No such duty exists unless the plaintiff establishes that the agency owed a special duty to the injured party. *Fudge*, 239 Kan. at 372, 720 P.2d 1093.

5

Kansas courts have recognized a special duty in limited circumstances. The most common one involves the state's duty to persons in its custody. *See Restatement (Second) of Torts* § 314A(4) (1965) (One required by law to take custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other). Similarly, a duty to an individual can also arise from a "special relationship" between a government agency and the injured person, such as a duty owed to children in state custody or residents in a state-owned dormitory. *See Kirk v. City of Shawnee*, 27 Kan. App. 2d 946, 950–52, 10 P.3d 27, 31 (2000) (citing cases). A special duty to an individual also can be created when the governmental entity performs an affirmative act that causes injury or where it made a specific promise or representation that under the circumstances creates a justifiable reliance on the part of the person injured. *Id*. at 951–52.

Plaintiff cites no case finding that a municipality owes a special duty to an incarcerated person[2] to care for that person's pets until the person is released, or that in performing the governmental function of controlling stray or abandoned animals, a municipality owes a duty of reasonable care to an animal's owner. Like most states, Kansas has adopted laws regulating a shelter's treatment and disposition of animals. The law generally requires a shelter to refrain from disposing of an impounded animal until after at least three days during which the public has access to inspect and recover

---

[2] It bears pointing out that plaintiff was incarcerated by authorities other than Dodge City.

the animal. *See* K.S.A. § 47-1710. *See also* Dodge City Mun. Code § 2-105a[3] (adopting same holding period). But the legislature's adoption of such standards does not create a private cause of action for negligence. K.S.A. § 60-5201 (no statute shall create a private right of action unless such right is expressly stated therein). Nor has plaintiff shown the existence of a special relationship that would otherwise impose a duty owed specifically to the owner of an animal impounded by a shelter. Accordingly, the court finds that Dodge City's motion to dismiss should be granted insofar as plaintiff asserts a claim for negligence.

B. *Conversion claim*. In what appears to be a claim for the tort of conversion, the complaint asserts that plaintiff was damaged by Dodge City's taking and disposition of her dogs despite her claim of ownership.

Conversion is "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights." *Bank v. Parish*, 46 Kan.App.2d 422, 434, 264 P.3d 491, 498 (2011) (citing *Millenium Fin. Svcs., LLC v. Thole*, 31 Kan.App.2d 798, 808, 74 P.3d 57 (2003)). "[T]he measure of damages for conversion of personal property is the fair and reasonable market value of the property converted at the time of conversion." *Horne v. Oller*, 5 Kan.App.2d 263, 267, 615 P.2d 791 (1980).

Relying on the market value rule, Dodge City argues that plaintiff has no viable claim because Kansas courts have said that "a household dog has no market value,"

---

[3] http://www.dodgecity.org/150/Municipal-Code-of-the-City.

7

and Dodge City's actions therefore cannot give rise to liability. Dkt. 13 at 6 (citing *Burgess v. Shampooch Pet Indus., Inc.*, 35 Kan.App.2d 458, 131 P.3d 1248, 1252 (2006)).

It is true the *Burgess* court was persuaded that "a Yorkshire terrier kept by its owner as a household pet for 13 years has no discernible market value." *Burgess*, 35 Kan.App.2d at 464.[4] But *Burgess* itself illustrates that the absence of a discernible market value is not fatal to a claim for damages. In affirming an award of damages to the plaintiff for $1,308.89, representing the amount of veterinary charges necessary to restore the dog's health, the court emphasized the flexibility that courts have in arriving at the proper measure of damages, with "the sundry rules for measuring damages … subordinate to the ultimate aim of making good the injury done or loss suffered and hence 'the answer rests in good sense rather than in a mechanical application of a single formula.'" *Id*. at 463 (quoting *Kansas Power & Light Co. v. Thatcher*, 14 Kan.App.2d 613, 617, 797 P.2d 162 (1990)). The court also observed that according to *Restatement (Second) of Torts* § 911, it may be unjust to limit damages involving pets to fair market value, and that substitutes such as "value to the owner" may be appropriate, an approach the court said was contemplated by language in *Thatcher*. *See Burgess*, 35 Kan.App.2d at 461. This flexible approach is in keeping with the common law view of conversion:

> [M]arket value of the property is not the only measure of damages recoverable in an action for conversion; the circumstances of the case may require a different standard. Rules relating to the measure of damages for conversion are flexible and can be modified in the interest of fairness. Thus, damages for conversion may include other losses or expenses

---

[4] It is unclear the extent to which the court was swayed by the age of the dog versus the fact that it was a Yorkshire terrier.

8

necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong.

18 *Am. Jur.2d Conversion* § 116.

At a minimum, the purchase price or replacement cost of a pet lost due to tortious conduct by another would likely be a reasonable measure of damages even in the absence any fair market value. As such, Dodge City has failed to show it is entitled to dismissal of plaintiff's claim of conversion.

**IT IS THEREFORE ORDERED** this 10th day of October, 2017, that defendant Dodge City's Motion to Dismiss for Failure to State a Claim (Dkt. 12) is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to plaintiff's claim of negligence against Dodge City; it is denied with respect to plaintiff's conversion claim against Dodge City.

___s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE